WILKINSON, Circuit Judge,
concurring:
I am happy to concur in Judge Floyd’s fine opinion in this case. At oral argument, I expressed the view that appellant’s able counsel was leading this court into a nest of “machine gun fire.”
Here’s why. To hold that the McCarran-Ferguson Act empowers state law to displace the Convention on the Recognition and Enforcement of Foreign Arbitral Awards would (1) ignore the Convention’s express statement that contracting states “shall recognize an agreement in writing under which the parties undertake to submit to arbitration,” and its directive that “[t]he court of a Contracting State ... shall, at the request of one of the parties, refer the parties to arbitration,” art. II, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (emphases added); (2) ignore the implementing legislation’s instruction that “[t]he Convention ... shall be enforced in United States courts,” 9 U.S.C. § 201 (emphasis added), and its conferral of jurisdiction to federal district courts for “action[s] [and] proceeding^] falling under the Convention,” id. § 203; (3) require this court to interpret the phrase “Act of Congress,” as used in the McCarran-Ferguson Act, to encompass a treaty, see Safety Nat’l Cas. Corp. v. Certain Underwriters at Lloyd’s, London, 587 F.3d 714, 722-23 (5th Cir.2009); (4) cause a treaty to lose its character as a treaty simply because it has been implemented by federal legislation, see id.; (5) contradict American Insurance Ass’n v. Garamendi, 539 U.S. 396, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003), where the Supreme Court indicated that the McCarran-Ferguson Act “was not intended to allow a State to ‘regulate activities carried on beyond its own borders’ ” and “cannot sensibly be construed to address preemption by executive conduct in foreign affairs,” id. at 428, 123 S.Ct. 2374 (citation omitted); see ante at 389; (6) ignore the intent of Congress, as expressed in the Federal Arbitration Act, to establish a “liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary,” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citing 9 U.S.C. § 2); (7) ignore the repeated admonitions of the Supreme Court that arbitration provisions are a valid way of resolving international commercial disputes, see, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 638-40, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 516-17, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); (8) cause the nation to speak with more than one voice in a matter of international commercial trade by enabling each of the fifty states to employ its own arbitration regime, see generally Crosby v. Nat’l Foreign Trade Council, 530 U.S. 363, 376-77, 381-82, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); (9) cause other nations to doubt this country’s commitment to its international covenants; and (10) invite retaliation when an American insurer (or, for that matter, any American company) seeks to enforce an arbitration agreement with an insured (or an agree *396 ment that relates to any number of commercial matters) in another country.
One might go on, but there is something to be said for ending at a round number, and so I do here.